STATE, EX REL. W. J. COOPER, V. W. S. HAMILTON.

[FILED MARCH 19, 1890.]

1. **Elections:** CITIES OF FIRST CLASS: COUNCILMEN: VACANCIES. Where a vacancy occurs in the office of councilman in a city of the first class, less than thirty days prior to the annual city election, it cannot be filled at that election.

2. **Quo Warranto:** INFORMATION MUST SHOW RELATOR'S RIGHT. When an information is filed by a private person to oust the incumbent from an office and instate the relator therein, it must state facts showing the relator's right to the office. (*State v. Stein,* 13 Neb., 529.)

ORIGINAL proceeding in nature of *quo warranto.*

*Lamb, Ricketts & Wilson,* for relator, cited: *State, ex rel. Roberts, v. Mayor,* 4 Neb., 260; *Leech v. State,* 78 Ind., 570; *People v. Porter,* 6 Cal., 260; *U. S. v. Wright,* 1 Mc-

Lean [U. S.], 509; Paine, Elections, sec. 238; *Gates v. Delaware County*, 12 Ia., 405; *Pace v. People*, 50 Ill., 432; *State v. Skirving*, 19 Neb., 497; *Hurford v. Omaha*, 4 Id., 350; *Follmer v. Nuckolls County*, 6 Id., 213; *State, ex rel., v. Buck*, 13 Id., 273.

*Charles L. Hall, contra,* cited : *State v. Graham*, 23 Neb., 74; *People v. Perley*, 80 N. Y., 624; *State v. Cobb*, 2 Kan., 32; *State v. Hunton*, 28 Vt., 594; *State, ex rel. Rea, v. Hay*, Wright [O.], 96; *State v. Boal*, 46 Mo., 528; *Miller v. English*, 1 Zab. [N. J.], 317; *State v. Stein*, 13 Neb., 532, and cases cited in opinion; *State v. Cones*, 15 Neb., 444; *Dorsey v. Ansley*, 72 Ga., 460; *State, ex rel. Mitchell, v. Tolan*, 33 N. J. L., 195; Paine, Elections, secs. 876–7.

NORVAL, J.

This was an information in the nature of a *quo warranto* by the relator against the respondent, the object of which was to establish the relator's supposed right to the office of councilman for the Fourth ward of the city of Lincoln, and to oust the respondent therefrom.   The allegations of the petition are as follows :

"1. Comes now the relator in his own behalf and prosecutes this action, the attorney general of the state of Nebraska having refused to prosecute the same, and for cause of action the relator shows to the court that he is, and for more than four years last past has been a citizen and resident and taxpayer and legal voter of the Fourth ward of the city of Lincoln, Lancaster county, Nebraska.

"2. That the city of Lincoln is a municipal corporation duly organized under the laws of Nebraska as a city of the first class since about the 15th day of March, 1889, and for two years prior thereto was a city of the first class having less than sixty thousand inhabitants, and as such a city was duly organized under the laws of the state of Ne-

braska, and during all the period of the last three years
has been divided into six wards, numbered in their order
from one to six.

"3. That at the annual election of said city of Lincoln
held on the first Tuesday in April, 1888, one Robert B.
Graham was duly elected councilman of said city of Lin-
coln, Nebraska, from the Fourth ward of said city for the
period of two years and qualified and took his seat as such
councilman; that as the time for the general election on
the first Tuesday in April, 1889, in said city approached,
said Graham announced himself a candidate for the nomi-
nation for mayor of said city at the hands of the republi-
can party of said city, and at and prior to the holding of
said convention of the republican party on March 30, 1889,
said Graham caused it to be given out that he would re-
sign his office as councilman for the Fourth ward of said
city prior to the annual election to be held on the first
Tuesday in April, 1889, and requested that a candidate be
nominated by the republican city convention to fill the
vacancy that would be caused by his resignation, to be
voted for at the forthcoming annual election in said city,
to be held on Tuesday, April 2, 1889; that in pursuance
thereto your relator was regularly placed in nomination
by the republican city convention as a candidate for coun-
cilman from the Fourth ward to fill the vacancy to be
caused by the resignation of said Graham; that like can-
didates to fill said vacancy were nominated by the demo-
cratic and other political parties to be voted for at said
forthcoming annual election; that on the first day of April,
1889, Robert B. Graham filed with the mayor and council
in open council meeting, then being duly and regularly
held, the following resignation, to-wit:

"'To the Honorable Mayor and Council, City: I hereby
tender my resignation as councilman of the Fourth ward,
to take effect at once.          R. B. GRAHAM,

"'Councilman Fourth Ward.'

State, ex rel. Cooper, v. Hamilton.

"Thereby creating a vacancy in the office of one of the councilmen from the Fourth ward for the period of one year to be filled at said general election; that it was generally understood by all the legal voters of said city, and especially of the Fourth ward, that there was to be elected at the annual election to be held on the first Tuesday in April, 1889, a councilman from the Fourth ward of said city to fill the vacancy caused by said resignation, in addition to other officers from said ward and said city to be elected for full terms; that in pursuance thereto the respective political parties printed and circulated generally at the polls in the Fourth ward of the city of Lincoln, at said city election held on the first Tuesday in April, 1889, being the 2d day of April, 1889, tickets having placed thereon, in addition to regular candidates for full terms, a candidate for councilman from said ward to fill the vacancy caused by the resignation of said Graham; that the total number of votes cast in the Fourth ward at said election were 829, of which your relator received 478 good and legal votes, being a majority of all the votes cast in said ward at said election, and was duly elected councilman to fill the vacancy caused by the resignation of said Graham, and then was, and ever since has been, ready to qualify and perform the duties of said office; that the votes with the poll books were duly returned to and filed with the city clerk of said city by the judges and clerks of election in said ward, and still remain on file with the said city clerk.

" 4. That notwithstanding the premises and the fact that said Robert B. Graham, on the 1st day of April, 1889, filed his resignation with the mayor and councilmen of said city, as stated in paragraph 3 hereof, the council, instead of accepting said resignation, over the objection of said Robert B. Graham, orally made in open council, referred the matter of the acceptance of said resignation to a committee on elections and the city attorney; that thereafter, and at said meeting on the 1st day of April, 1889, said

Graham participated in the proceedings of the council and at a meeting held on the 8th day of April, before the reorganization and his installation as mayor, the said Graham again participated in the proceedings of said council, then believing that the acceptance of his resignation was essential to his discharge from said office of councilman from the Fourth ward. At a meeting of the council held on the 8th day of April, 1889, the resignation of said Graham, filed on the 1st day of April, 1889, was by resolution accepted, without any report from the committee to which the same had been referred, and certain members of the council claiming that the said election of your relator on the first Tuesday in April, 1889, was invalid, because the resignation of Robert B. Graham had not formally been accepted until the 8th day of April, 1889, passed a motion or resolution directing the mayor to call a special election to fill the vacancy caused by the resignation of said Graham; that thereafter a special election was called by Robert B. Graham, who had resigned as councilman and had then been elected and installed as mayor, to be held in the Fourth ward on Monday, the 22d day of April, 1889 ; that at a republican caucus held by the legal voters of said ward on Saturday evening, the 20th day of April, 1889, to nominate a councilman to fill the supposed vacancy then existing and caused by the resignation of said Graham, your relator received the nomination for councilman from said Fourth ward to fill said vacancy, over the respondent W. S. Hamilton, who was also a candidate before said caucus; that at the special election held on the 22d day of April, 1889, in pursuance to said call, the defendant W. S. Hamilton received 195 votes, and your relator received 143 votes, and said W. S. Hamilton claims, by virtue of said election, to have been elected to fill the vacancy in the office of councilman of the Fourth ward of said city caused by the resignation of said Graham ; that at a regular meeting of the council held on Monday even-

ing, April 22, being the same day of said special elec-
tion, the mayor and council of said city pretended to
canvass the vote so cast for said W. S. Hamilton at said
pretended special election held on April 22, 1889, and it
was wrongfully found that said Hamilton was duly elected
councilman from the Fourth ward of the city of Lincoln,
and the clerk of said city thereupon issued to said Ham-
ilton a certificate of election; that thereafter, and on
Wednesday, the 24th day of April, 1889, said Hamilton
pretended to take the oath of office as councilman from the
Fourth ward of the city of Lincoln, before one Bell, a
notary public, and filed with the said clerk of said city a
bond as councilman from said Fourth ward. And not-
withstanding the election of your relator at the regular
annual election of said city held on the first Tuesday in
April, 1889, the said W. S. Hamilton, on the 24th day of
April, 1889, and from thence continuously hitherto, with-
out any legal warrant or claim or right, intruded himself
into said office of councilman from the Fourth ward, claim-
ing the right to fill said vacancy, and has used and exer-
cised, and still does unlawfully use and exercise, the office
of councilman from the Fourth ward in said council of
said city for the term of one year, aforesaid, in the place of
your relator, and claims to be a councilman in the place of
your relator, and to have, use, and enjoy all the rights,
franchises, privileges, and emoluments of said office, to the
damage and prejudice of said city of Lincoln and your re-
lator, and also against the peace and dignity of the state of
Nebraska.

"5. Your relator charges the fact to be that at the time of
holding said pretended special election on the 22d day of
April, 1889, whereat the said W. S. Hamilton claims to
have been elected, no vacancy in the office of councilman
from the Fourth ward of said city existed, said vacancy
having theretofore been filled by the election of your re-
lator at the regular annual election; that no authority

under the charter of said city, or in the statutes of the state of Nebraska, exists for the holding of a special election to fill a vacancy in the office of councilman in cities of the first class, and that the proceedings had and done in reference to said special election are void and of no force or effect in law, and he, the said Hamilton, acquired no rights to said office as councilman in consequence thereof, but is a mere intruder into said office."

The prayer was for judgment establishing the relator's right to the office, and ousting the respondent therefrom. The cause is submitted on a general demurrer to the petition.

It appears from the allegations of the petition that one day prior to the annual municipal election of 1889, one R. B. Graham, a councilman of the Fourth ward of the city of Lincoln, having one year yet to serve, filed with the mayor and council of said city, in open council meeting, his resignation in writing, to take effect at once, which was not accepted until April 8, 1889. At the annual city election held the day following the filing of said resignation the relator received a majority of all the votes cast in said ward for the office of councilman to fill said alleged vacancy. The mayor and council, being of the opinion that no vacancy existed at the date of the holding of said annual election, for the reason that Graham's resignation had not then been accepted, ordered a special election to be held in said ward on the 22d day of April, 1889, to fill the vacancy caused by the resignation of said Graham. At this election the respondent received a majority of all the votes cast, and a certificate of election was issued. He thereupon qualified and entered upon the discharge of the duties of the office. The respondent's claim to the office is founded upon the result of said special election, while the relator bases his right upon the result of said annual election.

It is contended by the relator that there is no authority

in law for filling the vacancy by special election. In our view it is not necessary to determine whether or not Hamilton is a *de jure* officer. He is a *de facto* officer at least, and is entitled to hold the same unless the relator shows he has a better title to the office. If the information was filed by the attorney general it would be different. Unless the petition therefore states facts showing the right of the relator to the office it does not state sufficient facts to constitute a cause of action. (*State v. Stein*, 13 Neb., 529.)

In making our decision we shall lay out of view one of the questions presented by the record, viz., whether or not there was a vacancy in the office of councilman at the date of the annual municipal election held on the 2d day of April, 1889. Conceding as true the position claimed by the relator that the office became vacant on the 1st day of April by Graham filing his resignation, then the question presented by the record now submitted, which requires examination and decision, is, Did the vacancy exist for such a length of time prior to the annual election that the relator's election thereat would be legal? In other words, when a vacancy occurs in the office of councilman the day prior to the annual election, can it be filled by the voters at such election?

We find but two provisions in the act of the legislature, under which the city of Lincoln was organized, relating to the filling of vacancies. The proviso clause to sec. 13 of chap. 14, Session Laws, 1889, page 156, reads as follows: "*Provided*, That officers whose terms are unexpired shall hold their offices for the unexpired terms, and elections shall be made as vacancies occur." Subdivision XXV of sec. 67, of the same act, confers upon the mayor and city council power to enact ordinances "To provide for removing officers of the city for misconduct, whose offices are created and made elective by this act, and to provide for filling such vacancies as may occur in any elective office by appointment by the mayor, by assent of the council, to hold until the next general election."

The last clause of the above quoted proviso to sec. 13 simply authorizes the filling of vacancies by election. Said subdivision XXV of sec. 67 empowers the mayor and council to provide by ordinance for the filling of vacancies in the elective offices of the city by appointment. It requires the passage of an ordinance for that purpose before a vacancy can be filled in that manner. It will be observed that neither of the above quoted sections provide how long prior to the annual city election a vacancy must occur in order to be filled thereat. We must, therefore, look to the general laws of the state in order to ascertain the intention of the legislature.

Sec. 107 of the general election law provides that "Vacancies occurring in any state, judicial district, county, precinct, township, or *any public elective office* thirty days prior to any general election shall be filled thereat. * * * Vacancies occurring in the office of any police magistrate in cities where the unexpired term does not exceed one year shall be filled by appointment, but vacancies occurring in such office less than thirty days prior to any city election, and where the unexpired term exceeds one year, shall be filled by special election," etc. By this section vacancies in any public elective office (with certain exceptions, which do not include councilmen) existing thirty days preceding the general election shall be filled at such election. This section does not conflict with any provision of the act which governs the city of Lincoln, and clearly applies to the filling of a vacancy in the office of councilman. That it does so apply is evident from the fact that it makes an exception as to the office of police magistrate. Graham's resignation having been filed but one day before the annual city election, the votes cast thereat for the relator were a nullity.

The petition, therefore, fails to show that he is entitled to the office of which he claims to be unlawfully de-

prived. . The demurrer is sustained and the proceedings dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.